CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 0 4 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STANLEY BURNELL BENNETT,<br>For himself and on behalf of all similarly situated individuals,<br><br>    Plaintiff,<br><br>v.<br><br>OMNISOURCE CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 7:14CV00309<br><br>**MEMORANDUM OPINION**<br><br>Hon. Glen E. Conrad<br>Chief United States District Judge |

Stanley Burnell Bennett filed this action against a number of defendants, including OmniSource, Inc. ("OmniSource"), OmniSource South East, LLC ("OSCSE"), and Steel Dynamics, Inc. ("SDI"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Fair Credit Reporting Act. The case is presently before the court on SDI's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). For the following reasons, the motion will be granted.

## Background

At all times relevant to the instant action, Bennett worked as a sorter at OSCSE's metal processing facility in Vinton, Virginia. OSCSE is a wholly owned subsidiary of OmniSource, and Omnisource is a wholly owned subsidiary of SDI. Both OmniSource and SDI are incorporated in Indiana and maintain their principal places of business in Fort Wayne, Indiana.

SDI has moved to dismiss for lack of personal jurisdiction. SDI argues that it has no direct contacts with Virginia, and that the activities conducted in Virginia by OSCSE and OmniSource should not be attributed to it for purposes of exercising personal jurisdiction.

In support of its motion, SDI provided declarations from Richard A. Poinsatte, the vice president and treasurer of SDI. According to the declarations, SDI and OmniSource are governed by

separate boards of directors and OSCSE is governed by a single manager, OmniSource. The declarations indicate that SDI and OmniSource maintain separate corporate minutes, records, and accounts, and that SDI has no control over the day-to-day operations of OmniSource or OSCSE. The declarations also indicate that SDI is not authorized to do business in Virginia; that SDI does not maintain a registered agent for service of process in Virginia; that SDI does not maintain any offices, employees, warehouses, plants, suppliers, or distributors in Virginia; that SDI does not own any assets in Virginia; that SDI does not regularly do or solicit business in Virginia; and that SDI does not derive substantial revenue from goods used or services rendered in Virginia.

Poinsatte was deposed on July 14, 2015. During his deposition, Poinsatte testified that he is employed by SDI, but that he serves as an officer for both SDI and OmniSource. Specifically, Poinsatte serves as SDI's vice president and treasurer and as OmniSource's vice president and assistant secretary. While he is not the only individual who serves as an officer for both companies, Poinsatte testified that there are officers of SDI who are not officers of OmniSource, and vice versa. Poinsatte further testified that SDI and OmniSource maintain separate boards of directors, that they have separate board meetings, and that they keep separate minutes.

Poinsatte also answered a series of questions regarding the office space that SDI and OmniSource share in Fort Wayne. Poinsatte explained that the companies occupy separate areas of the office space, which consists of three buildings connected by walkways. OmniSource owns the buildings and is paid rent by SDI. Poinsatte testified that his area is completely occupied by SDI employees, and that "[y]ou walk through a passageway to get to where OmniSource [employees] might be." Poinsatte Dep. 12. Poinsatte also testified that the same janitorial service cleans all three buildings, and that employees of the two companies utilize a shared snack room.

2

When asked about the tasks that he performs at work for OmniSource, Poinsatte testified that he does "not perform any OmniSource task, unless it's related to [SDI's] investment in OmniSource." Id. at 9. Poinsatte estimated that he spends about five percent of his time per month interacting with employees of OmniSource in his role as SDI's treasurer, and that he receives approximately eight emails per month from OmniSource employees regarding finance-related matters.

As the parent corporation of OmniSource, SDI has a financial interest in OmniSource's well-being. Poinsatte testified that SDI has provided guarantees to vendors on behalf of OmniSource, and that SDI has loaned OmniSource capital.

## Procedural History

Bennett filed the instant action on June 20, 2014. On February 19, 2015, Bennett filed a second amended complaint against the defendants. SDI subsequently moved to dismiss for lack of personal jurisdiction. On June 12, 2015, the court took the motion under advisement and granted Bennett the opportunity to depose Poinsatte. Following the conduct of the deposition, Bennett and SDI filed supplemental briefs in support of their respective positions on the issue of personal jurisdiction. The motion to dismiss is now ripe for review.*

## Standard of Review

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving the existence of jurisdiction over the defendant by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). When, as here, the court decides such motion without an evidentiary hearing, "the plaintiff need prove only a prima facie case of personal jurisdiction." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d

---

* The parties have waived oral argument and the court is of the opinion that it would not aid the decisional process.

3

56, 60 (4th Cir. 1993). In deciding whether the plaintiff has made the requisite showing, the court must draw all reasonable inferences arising from the evidence, and resolve all factual disputes, in the plaintiff's favor. Id.

## Discussion

A federal district court may exercise personal jurisdiction over a nonresident defendant in the manner provided by state law. Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002). "Thus, for a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with . . . due process requirements." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). With regard to the first requirement, the United States Court of Appeals for the Fourth Circuit has held that "Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause." Young, 315 F.3d at 261; see also Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000). Consequently, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996).

The due process prong of the personal jurisdiction analysis necessitates an inquiry into whether a defendant maintains sufficient "minimum contacts" with the forum state. Carefirst, 334 F.3d at 397. In the "canonical" case of International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Supreme Court held that a court may exercise jurisdiction over a nonresident defendant only "if the defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. ___, 131 S. Ct. 2846, 2853 (2011) (quoting Int'l Shoe Co., 326

4

U.S. at 316). This requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In the instant case, Bennett has not offered any evidence to rebut the affidavits indicating that SDI has no direct contacts with Virginia. Instead, Bennett argues that SDI's relationship with OmniSource, its subsidiary that transacts business in Virginia, is such that OmniSource's jurisdictional contacts should be imputed to SDI. For the following reasons, however, the court disagrees.

As a general rule, "the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." Saudi v. Northrop Grumman Corp., 427 F.3d 271, 276 (4th Cir. 2005). Thus, "the mere fact that [a parent corporation's] subsidiaries do business in [the forum state] does not confer jurisdiction over [the parent corporation]." Gray v. Riso Kagaku Corp., No. 95-1741, 1996 U.S. App. LEXIS 8406, at *8 (4th Cir. Apr. 17, 1996); see also Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 63 (4th Cir. 1993) (holding that the parent-subsidiary relationship between two companies was insufficient to justify the exercise of personal jurisdiction over the parent company in a forum with which it did not have sufficient minimum contacts).

In order for the minimum contacts of a subsidiary to be imputed to a parent corporation, a plaintiff must show that the subsidiary is an "alter ego" of the parent corporation. Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 433 (4th Cir. 2011). Stated differently, the record must contain sufficient facts to warrant piercing the corporate veil between the two entities. Id.; see also Mylan Labs., Inc., 2 F.3d at 63 (noting that the analysis of whether the court could pierce

5

the corporate veil of a corporation to reach its parent company was "virtually identical" to the analysis of whether the court could exercise personal jurisdiction over that parent company).

Courts look to the law of the forum state to determine whether the corporate veil should be pierced to exercise personal jurisdiction over a nonresident defendant. See Newport News Holdings Corp., 650 F.3d at 434 (applying Virginia law to determine whether the district court found sufficient facts to pierce the corporate veil and, consequently, to exercise personal jurisdiction over the defendant). "In Virginia, unlike in some states, the standards for veil piercing are very stringent and piercing is an extraordinary measure that is permitted only in the most egregious circumstances." C.F. Trust, Inc. v. First Flight Ltd. P'Ship, 580 S.E.2d 806, 811 (Va. 2003). Specifically, a plaintiff must show that "undue domination and control was exercised by the parent corporation over the subsidiary," Beale v. Kappa Alpha Order, 64 S.E.2d 789, 797 (Va. 1951), and that such control was used "to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." O'Hazza v. Executive Credit Corp., 431 S.E.2d 318, 320 (Va. 1993); see also Newport News Holdings Corp., 650 F.3d at 434 (affirming the district court's exercise of personal jurisdiction over the nonresident owner of a company where the company "had no separate identity from [the owner]," and the owner "controlled and used [the company] to commit an injustice").

In his supplemental brief in opposition to the pending motion, Bennett argues that SDI and OmniSource are "so blended" as to constitute "one true corporate entity." Pl.'s Supp'l Br in Opp'n 2. To support this argument, Bennett emphasizes that SDI and OmniSource share certain corporate officers, work facilities, and capital, and that SDI has provided guarantees to vendors on behalf of OmniSource. Under existing case law, however, such evidence is insufficient to show that SDI exerts a degree of control over OmniSource that is greater than what is normally expected from a parent corporation, or that SDI is a separate entity in name alone. See Richfood, Inc. v. Jennings,

6

499 S.E.2d 272, 276 (Va. 1998) (emphasizing that "[t]he mere showing that one corporation is owned by another or that they share common officers is not a sufficient justification for a court to disregard their separate corporate structure"); O'Hazza v. Executive Credit Corp., 431 S.E.2d 318, 322 (Va. 1993) (finding that "continuing loans" made to a corporation did not justify piercing the corporate veil); Gray, 1996 U.S. App. LEXIS 8406, at *9 (holding that the fact that a parent corporation gave a subsidiary "infusions of cash" was insufficient to pierce the corporate veil, as was the fact that "a majority of the members of [the subsidiary's] board of directors were also associated with [the parent corporation]"); Omega Homes, Inc. v. Citicorp Acceptance Co., 656 F. Supp. 393, 400 (W.D. Va. 1987) (holding that evidence that a parent corporation "supervised the creation of its subsidiaries, undertook to finance them and even contributed management skills and resources" merely described the "type of participation . . . to be expected from any parent corporation").

In the absence of any evidence that SDI exercises extraordinary control over OmniSource, much less that such control is used for an improper purpose, the court concludes that Bennett has failed to make a prima facie showing of personal jurisdiction over SDI based on the contacts of its subsidiary. Because SDI lacks sufficient contacts with the Commonwealth of Virginia, the court will grant its Rule 12(b)(2) motion to dismiss.

### Conclusion

For the reasons stated, SDI's motion to dismiss for lack of personal jurisdiction will be granted. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 4th day of November, 2015.

*/s/ Glen E. Conrad*
Chief United States District Judge

7

Case 7:14-cv-00309-GEC   Document 35   Filed 11/04/15   Page 7 of 7   Pageid#: 289